The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner William C. Bost and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. That on or about 7 December 1993 there existed an employer-employee relationship between plaintiff and the Defendant Employer.
3. That on or about 7 December 1993 plaintiff's average weekly wage was $410.00.
4. That plaintiff received short term disability benefit payments from 27 December 1993 to 7 February 1994, in the amount of $1,302.00. The short term disability plan was a fully company funded plan.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Bost, plaintiff was 33 years old, being born on 12 July 1961.
2. Plaintiff is married with three children and has a 10th grade education.
3. Plaintiff began working with the Defendant/Employer approximately 2 1/2 years before 7 December 1993 as a mix-man for the soaper.
4. That prior to 7 December 1993 the Employee-Plaintiff had never experienced any medical problems with his left knee.
5. That when the Employee-Plaintiff was a child, he injured his right knee in a motorcycle accident.
6. The primary responsibilities of plaintiff as a mix-man for the soaper was to make mixes for the cloth to be dyed. On or about 7 December 1993 plaintiff was working on the third shift, between 10:50 p.m. and 6:50 a.m.
7. On or about 7 December 1993 plaintiff was cleaning up acid which had leaked onto the floor from an "A-Frame", which is a device which holds cloth. Plaintiff was using a squeegee to clean the floor.
8. The Employee-Plaintiff fell where he was cleaning the caustic acid spill and his left knee hit the concrete floor.
9. Russell Redden, a co-employee, was working at a nearby machine. Redden had his back to plaintiff. Russell Redden heard a thud when the Employee-Plaintiff fell and, upon turning around, saw plaintiff getting up from the floor. Redden did not see plaintiff fall. Redden asked plaintiff if he was "ok". Plaintiff told Redden that he may have bruised his knee.
10. After the Employee-Plaintiff fell, his left knee immediately felt numb. He went to the restroom and noticed that his pant leg was stained. Employee-Plaintiff also noticed upon pulling up his pant leg that he has suffered an abrasion to the left knee.
11. Plaintiff states that he then went to the employee restroom. His knee had an abrasion and his pants were torn. Redden reported no observation of a tear in plaintiff's pants.
12. Plaintiff alleges he reported the fall to his supervisor, Powell Whittman. No accident report was filed and plaintiff did not report to the company nurse.
13. Jeff Burnett was also employed by the Employer-Defendant on the evening of 7 December 1993 and early morning of 8 December 1993. Jeff Burnett was present when Employee-Plaintiff informed Powell Whitman that he had fallen and asked Whitman to write up the incident. Jeff Burnett heard the Employee-Plaintiff inform the supervisor, Powell Whitman, that he had fallen, and Burnett also heard Whitman say he would take care of it.
14. Plaintiff completed his December 7-8 shift, and worked the third shift on the following days as well: 8 December, 9 December, 10 December, 13 December, 14 December, and 15 December 1993. Plaintiff was not assigned to work on Saturday 11 December or Sunday 12 December 1993.
15. On 16 December or 17 December, plaintiff made his first report to Beth Davis, the company nurse. Plaintiff told Ms. Davis that when he awoke on 16 December his left knee was hurting.
16. On 16 December 1993, plaintiff presented to Park Ridge Hospital. Plaintiff was complaining of left knee pain. He reported to the emergency staff that he had been experiencing pain for approximately three days. He denied any recent injuries, but stated that he had experienced a motorcycle accident years before.
17. Plaintiff was referred to Dr. Todd B. Guthrie who first saw plaintiff on 21 December 1993. Plaintiff gave a history to Dr. Guthrie of a motorcycle injury several years prior in which he suffered torn ligaments in his left knee. During this initial examination, plaintiff reported that he had experienced a contusion on his left knee one week prior to the 21 December examination and also a contusion one month prior. Dr. Guthrie's examination notes contain the following statement: "Currently he can't recall any particular injury which brought this on."
18. On 7 January 1994, Dr. Guthrie performed an arthroscopy and chondroplasty on plaintiff's left knee.
19. On 2 February 1994, Dr. Guthrie examined plaintiff. At that time, plaintiff reported that he was working out at the gym with his father and that he wanted to go back to work. Dr. Guthrie found full range of motion, no significant effusion, and a benign wound at the operative site. Dr. Guthrie released plaintiff to return to work and released plaintiff from his care.
20. Dr. Guthrie testified that the surgical findings were not inconsistent with someone who had suffered a trauma such as the Employee-Plaintiff had in this case.
21. On 29 March 1994, plaintiff reported to Dr. Guthrie that he was experiencing some difficulty with some of his work duties. Dr. Guthrie imposed a 25 pound pushing/pulling restriction. On 12 April 1994, Dr. Guthrie recommended physical therapy.
22. On 30 August 1994, Dr. Robert F. Eaton, of Hendersonville Orthopaedic Associates, examined plaintiff upon referral from Plaintiff's counsel. The purpose of this evaluation was for a second opinion. As a result of the 30 August 1994, examination and Dr. Eaton's review of plaintiff's medical records, Dr. Eaton was unable to give a definitive diagnosis.
23. On 1 May 1995, Dr. Eaton again examined Plaintiff. Dr. Eaton found that his initial notes did not reflect sciatica symptoms, but those of Dr. Guthrie did. Dr. Eaton was unable to determine whether the sciatica symptoms to be related to a disc problem.
24. Dr. Eaton also testified that during his examinations of the Employee-Plaintiff, he complained of symptoms consistent with sciatica.
25. Dr. Eaton stated that it was his opinion that Employee-Plaintiff suffered from sciatica neuritis and that this was a result of the fall that occurred on the early morning of 8 December 1993.
26. Dr. Eaton rated plaintiff as retaining a ten percent (10%) permanent partial impairment to his left lower extremity.
27. Dr. Eaton testified that it was his opinion that the injury to the Employee-Plaintiff's back (sciatica nerves), as detailed in both the medical records of Dr. Eaton and Dr. Guthrie, was related to or caused by the Employee-Plaintiff's fall at work on 8 December 1993.
28. Dr. Eaton testified that the Employee-Plaintiff suffered from symptoms that were consistent with someone diagnosed with sciatic neuritis.
29. Dr. Eaton testified that the Employee-Plaintiff suffered from a disability as a result of the sciatic neuritis. However, Dr. Eaton did not have sufficient information to give a disability rating to the back of the Employee-Plaintiff. Dr. Eaton testified that further diagnostic work needed to be performed before such a determination could be made.
30. That additional medical diagnosis and treatment is needed by the Employee-Plaintiff to determine what, if any, permanent disability the Employee-Plaintiff suffers to the back, or other part of the body, as a result of the sciatica neuritis.
31. Plaintiff was out of work from 16 December 1993 through 7 February 1994. During his time out of work, plaintiff received short-term disability payments from a fully company-funded disability plan in the amount of $1,302.00.
* * * * * * * * * * *
Based upon the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of an injury by accident arising out of and in the scope and course of employment on 7 December 1993 Plaintiff sustained a specific traumatic incident for which he is entitled to compensation. G.S. § 97-2(6).
2. As a result of this specific traumatic incident Plaintiff was temporarily totally disabled and is, therefore entitled to compensation beginning 16 December 1993 continuing through 7 February 1994. Temporary total disability compensation shall be paid at the rate of $273.33 per week based upon Plaintiff's stipulated average weekly wage of $410.00 per week. G.S. § 97-29.
3. As the result of plaintiff's 7 December 1993 injury by accident, plaintiff is entitled to have defendants pay for all reasonable medical expenses incurred or to be incurred and also expenses related to travel, pharmaceutical and hospitalization which are associated with this injury by accident, when bills for the same have been submitted to defendant-carrier and approved pursuant to procedures established by the Industrial Commission.
4. Plaintiff has sustained a ten percent (10%) permanent partial disability of the leg as a result of his compensable injury on 7 December 1993.
5. Defendants are due a credit for the short-term disability payments Plaintiff received from the company-funded disability plan in the amount of $1,302.00.
6. At this time, there is insufficient medical evidence from which the Full Commission could conclude that plaintiff was entitled to permanent partial disability compensation for his back, if any. G.S. § 97-31(23).
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay to Plaintiff temporary total disability benefits in the amount of $273.33 per week for the period 16 December 1993 through 7 February 1994. Such compensation having accrued, shall be paid in a lump sum without commutation subject to counsel fee hereinafter approved and a credit for the benefits received in short term disability in the amount of $1,302.00.
2. Defendants shall pay to plaintiff compensation for his permanent partial impairment of ten percent to Plaintiff's knee due to the compensable injury. Plaintiff shall receive 20 weeks at the compensation rate of $273.33 per week for his permanent partial impairment.
3. Defendant shall pay all past and future medical expenses incurred by plaintiff as a result of the injury by accident when bills for the same are submitted and approved pursuant to procedures established by the Commission.
4. An attorney's fee in the amount of 25 percent (25%) of the accrued compensation which has been recovered by plaintiff is hereby approved for Plaintiff's counsel. This amount shall be deducted from the compensation due Plaintiff and paid directly to Plaintiff's attorney.
5. This matter shall remain open until such time as a disability rating, if any, relating to the sciatica neuritis of the Employee-Plaintiff can be obtained. After such rating is obtained the parties should submit any documents, depositions or other related evidence to the Full Commission which will then determine if a subsequent permanent partial disability award is appropriate.
6. Defendants shall pay the costs.
 S/ ___________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER